458 So.2d 235 (1984)
Aubrey Arthur LIVINGSTON, Appellant,
v.
STATE of Florida, Appellee.
No. 61967.
Supreme Court of Florida.
September 13, 1984.
Rehearing Denied November 26, 1984.
H.T. Smith, Miami, for appellant.
Jim Smith, Atty. Gen., and Sharon Lee Stedman and Penny H. Brill, Asst. Attys. Gen., West Palm Beach, for appellee.
BOYD, Chief Justice.
This case is an appeal from the judgments of conviction of crimes including capital felonies for which sentences of death were imposed. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. Because we find that the trial court committed prejudicial *236 error in the conduct of the trial, we reverse the convictions and order a new trial.
Appellant was indicted on five counts of first-degree murder and six counts of kidnapping. At the trial, after the presentation of all the evidence, the final arguments, and the instructions to the jury, the jury began its deliberations at 4:24 on a Friday afternoon. At 6:50 p.m. that same day, the jurors sent the judge a note saying that they were not yet able to reach a unanimous verdict. When the judge announced his intention to allow the jurors to go to their homes for the weekend, defense counsel objected. Notwithstanding the defense objection, the judge called the jury in and directed that it reconvene at ten o'clock on Monday morning. The judge admonished the jurors against reading, viewing, or listening to news reports about the trial. When the court reconvened on Monday the defense renewed its objection to the jury having been allowed to separate for the weekend. Defense counsel also moved for a mistrial. The court denied the motion, following which the defense asked the court to conduct individual voir dire of the jurors. The court then asked the jurors if they had discussed the case with anyone or allowed it to be discussed in their presence and whether they had read, seen, or heard any news reports about the case. Each juror responded in the negative to each question. The jury then resumed deliberations at 10:43 a.m. on Monday and at 2:10 p.m. it returned verdicts finding appellant guilty on all five charges of first-degree murder and six counts of kidnapping.
Appellant argues that the trial judge erred in allowing the jury to separate for the weekend in the midst of its deliberations. Appellant says that there was prejudice inherent in the action because of the myriad of influences to which a juror might be subjected when allowed to go about his personal business for a weekend in the midst of deliberations. Appellant relies heavily on the fact that there was pervasive pre-trial publicity and that all of the jurors had previously heard about the case and also on the circumstance that appellant's co-defendant had been tried and convicted only a week before appellant's trial.
Appellant relies on the decision in Raines v. State, 65 So.2d 558 (Fla. 1953). There the trial court, after the jury had begun its deliberations, allowed the jurors to separate and go to their homes for the night. As the Supreme Court noted specially in its opinion, the recess was taken after "the case had been fully submitted to the jury" and after the jury had deliberated for one and one-half hours. The Court said that the question of whether the trial court had erred turned on the interpretation of sections 919.01 and 919.92, Florida Statutes (1953). The Court reasoned as follows:
There was no objection raised when the jury was dispersed, nor were counsel consulted. There is no showing in the way of evidence that defendant's rights were prejudiced but trials should not be conducted in a way that defendant has good reason for the belief that he was deprived of fundamental rights. The opportunity was open for tampering with the jury and the temptation to do so was such that we are not convinced that the appellant's trial was conducted with that degree of fairness and security that the bill of rights contemplates. A fifteen hours absence under no restraint whatever leaves too much room to question the bona fides of everything that took place during that time... . It imposes too great a burden on the defendant to produce evidence of prejudice to his rights under such circumstances. We think this error calls for reversal.
65 So.2d at 559-60.
The Court in Raines relied specifically on two statutory provisions relating to criminal procedure. Section 919.01(1), Florida Statutes (1953), provided:
After the jury shall have been sworn they shall sit together and hear the proofs and allegations in the case, which shall be delivered in public and in the presence of the accused; and after hearing such proofs and allegations the jury shall be kept together in some convenient place until they agree on a verdict or are *237 discharged by the court, and the sheriff or a bailiff shall be sworn to take charge of the jury.
Section 919.02 provided:
Unless the jurors have been kept together during the trial the court may, in its discretion, after the final submission of the cause, order that the jurors may separate for a definite time to be fixed by the court and then reconvene in the courtroom before retiring for consideration of their verdict.
These provisions were repealed by chapter 70-339, section 180, Laws of Florida, after the adoption of the Florida Rules of Criminal Procedure, which superseded all conflicting rules and statutes. See Chapter 919, 23 Fla. Stat. Ann. 358, Historical Note (1975). The substance of these two former procedural statutes is now contained, with modification, in Florida Rule of Criminal Procedure 3.370. See Fla.R.Crim.Pro. 3.370; 34 Fla. Stat. Ann. 84, Author's Comment (1975). Rule 3.370 provides:
(a) Regulation of Jury. After the jurors have been sworn they shall hear the case as a body and, within the discretion of the trial judge, may be sequestered.
(b) Separation after Submission of Cause. Unless the jurors have been kept together during the trial the court may, after the final submission of the cause, order that the jurors may separate for a definite time to be fixed by the court and then reconvene in the courtroom before retiring for consideration of their verdict.
While rule 3.370 provides for trial court discretion to allow the jurors to separate after final submission of the cause and before retiring to deliberate, it does not specifically contemplate such a separation in the midst of deliberations. Nor does section 918.06, Florida Statutes (1979), which provides the court with discretion to either sequester the jury or allow them to separate when they "leave the jury box," specifically allow for such a separation during deliberations. Thus there is no specific authority by statute or rule for the action of the trial court judge.
The right of a defendant to have the jury deliberate free from distractions and outside influences is a paramount right, to be closely guarded. Durano v. State, 262 So.2d 733 (Fla. 3d DCA 1972). For example, where an overnight recess was taken in the midst of jury deliberations, after the giving of an Allen charge to the deadlocked jury, and the jurors were allowed to separate without admonitions, it was held that the trial court was required to examine the jurors the following day to inquire into their conduct during their absence and as to the possible influence of exposure to media coverage and other matters. Diaz v. State, 435 So.2d 911 (Fla. 4th DCA 1983).
Where the jury has not been sequestered during trial, the judge has the discretion to allow the jury to separate after the taking of all the evidence and the giving of instructions and before they begin deliberating. Fla.R.Crim.Pro. 3.370(b). There is no requirement of sequestration prior to final retirement for deliberations. Simmons v. State, 214 So.2d 729 (Fla. 3d DCA 1968). But thereafter, especially in a capital case where there has been extensive pre-trial publicity, we believe that different principles should apply.
There is no automatic rule requiring sequestration of the jury during the trial of a capital case, the matter being a discretionary one to be governed by the necessities of each such proceeding. Ford v. State, 374 So.2d 496 (Fla. 1979), cert. denied, 445 U.S. 972, 100 S.Ct. 1666, 64 L.Ed.2d 249 (1980). However, to allow the jurors to disperse for a weekend after they have begun their deliberations raises serious questions about their ability to reconvene and resume deliberations completely free from outside influences. Even in the trial of a noncapital felony, the separation of the jury prior to the rendering of the verdict has been recognized to be an irregularity which may call for the granting of a new trial. Smith v. State, 40 Fla. 203, 23 So. 854 (1898). It should be noted that Smith, a noncapital case, was decided before the advent of electronic communications *238 and entertainment in the home on a mass basis.
In the instant case, the court gave admonitions to the jurors before the weekend recess and examined them prior to the resumption of deliberations on Monday. However, the issue in this case is whether the weekend recess in the midst of deliberations rendered the jurors so susceptible to the operation of improper influences as to have been reversible error even with admonitions before and voir dire after the recess. The Raines decision recognized that some situations carry such an inherent danger of improper influence that courts should remedy the error without requiring the accused to show that any such improper influences actually operated upon or affected the jury. More recent decisions have properly applied this principle and illustrate its continued validity. Armstrong v. State, 426 So.2d 1173 (Fla. 5th DCA 1983); McDermott v. State, 383 So.2d 712 (Fla. 3d DCA 1980); Kennick v. State, 107 So.2d 59 (Fla. 1st DCA 1958).
The question of whether jurors may be allowed to separate and go to their homes (and about their personal business) for an extended period of time after they have begun deliberating has been resolved in a variety of ways by courts of the various other jurisdictions. See Annot., 72 A.L.R.3d 248 (1976 & Supp. 1983). However, the courts of a majority of states have held, either by statute, court rule, or the common law, that such a separation, especially in capital cases and where the defendant objects, is prejudicial error. See, e.g., Kimoktoak v. State, 578 P.2d 594 (Alaska 1978); Hughes v. State, 437 A.2d 559 (Del. 1981); Mason v. State, 239 Ga. 538, 238 S.E.2d 79 (1977); People v. Ritzert, 17 Ill. App.3d 791, 308 N.E.2d 636 (1974); Bales v. State, 418 N.E.2d 215 (Ind. 1981); Walker v. State, 410 N.E.2d 1190 (Ind. 1980); White v. Maxwell, 174 Ohio St. 186, 187 N.E.2d 878 (1963); Gibson v. State, 512 P.2d 1399 (Okla. Crim. App. 1973); Gonzalez v. State, 593 S.W.2d 288 (Tenn. 1980); O'Neil v. State, 642 S.W.2d 259 (Tex. Crim. App. 1982); State v. Smalls, 99 Wash.2d 755, 665 P.2d 384 (1983).
The reason for such a rule is of course, quite simply, to safeguard the defendant's right to a trial by an impartial jury. This right is fundamental and is guaranteed by the sixth amendment to the United States Constitution and article I, section 16 of the Florida Constitution. There is no way to insulate jurors who are allowed to go to their homes and other places freely for an entire weekend from the myriad of subtle influences to which they will be subject. Jurors in such a situation are subject to being improperly influenced by conversations, by reading material, and by entertainment even if they obey the court's admonitions against exposure to any news reports and conversations about the case they have been sworn to try. The Supreme Court of Washington explained the problem this way:
Jurors might be subjected to any number of prejudicial influences whenever the jury is allowed to separate. A juror allowed to return to his home overnight might be prejudiced by any of the myriad influences on his life. Who can say how a juror might be influenced by contact with his family and friends, or exposure to the various news and entertainment media during an evening at home?
In our opinion, jurors are especially sensitive to prejudicial influence during deliberations. While still hearing evidence, it is probably easier for jurors to keep an open mind. Moreover, the impact of potentially prejudicial influences will be dissipated by subsequent evidence, the arguments, and instructions. But when the jurors have heard all the evidence, and have been focused onto the issues before them by the arguments of the parties and instructions, the potential for prejudice increases substantially.
... A chance remark by a juror's spouse or a program watched on television during the juror's 12 hours at home would have more immediacy than the evidence. There is a very real possibility that the juror's recollection of the evidence or perception of it might be *239 distorted by such influences received subsequent to the conclusion of the evidence.
Of course, it is usually impossible to determine whether such influences actually prejudice a juror against the defendant in a particular case. The juror himself may well be unaware of the subtle influences which affect his decision. For this reason, admonition and instruction of the jury is probably ineffective in ameliorating the prejudicial effects of separation during the deliberations. For this reason also, the use of juror affidavits to prove a probability of prejudice is of dubious value; a juror cannot swear to being prejudiced by influences of which he is unaware.
State v. Smalls, 99 Wash.2d at 765, 665 P.2d at 390-91.
We therefore find that the trial court erred and that the error prejudiced appellant's right to a fair trial. We hold that in a capital case, after the jury's deliberations have begun, the jury must be sequestered until it reaches a verdict or is discharged after being ultimately unable to do so. A separation of the jurors after commencement of deliberations will generally be grounds for a mistrial, save for exceptional circumstances of emergency, accident, or other special necessity. Such a strict rule appears to be necessary in order to keep the attention of the jurors properly focused and concentrated on their deliberations.
The judgments of conviction are reversed and the case is remanded for a new trial.
It is so ordered.
ADKINS, OVERTON, ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.